UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HYPERBARIC OPTIONS, LLC, et

    al., Plaintiffs,

                                                        Case No. 12-12020

v.                                          Honorable Julian Abele Cook, Jr.

OXY-HEALTH, LLC, et al.,

    Defendants.

## ORDER

In this lawsuit, the Plaintiffs, Hyperbaric Options, LLC, National Hyperbaric Directory, LLC, and Gregory Harris, complain that the Defendants, Oxy-Health, LLC, Samir Patel (Oxy-Health CEO and President), Sandy Haines (Oxy-Health Director of Legal Affairs), and Andrew Budiarto and Benjamin Galbraith (Oxy-Health sales associates), violated Michigan state laws by publishing defamatory statements about them on the internet. This civil action, after having been filed on March 27, 2012 in the Oakland County Circuit Court of Michigan, was subsequently removed by the Defendants to this Court on May 4, 2012.

Currently before the Court are the Defendants' motion to dismiss the Plaintiffs' first amended complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), as well as their application for authority to file a second amended complaint.

I.

One of the Plaintiffs, Hyperbaric Options, markets, sells, and rents new and used hyperbaric chambers. A hyperbaric chamber - shaped like a tube - is designed to hold a person, who lies inside

on his or her back. A clear plate is located at face level so that the user is able to see outside of the chamber. Once the chamber is closed by the user, the pressure is automatically increased and oxygen begins to flow. Professional athletes have used these chambers for their recuperative benefits.

A second Plaintiff, National Hyperbaric Directory, sells subscriptions to hyperbaric clinics and other providers of hyperbaric services in exchange for the inclusion of the names of those subscribers in the Hyperbaric Directory online national directory. A third Plaintiff, Gregory Harris, is the owner of Hyperbaric Options and operates the National Hyperbaric Directory with his wife.

The Defendant, Oxy-Health is a California company, which (1) sells and rents new and used hyperbaric chambers, and (2) maintains a website, OxyHealth.com in conjunction with its principal business enterprise. The following individual Defendants have been identified by the Plaintiffs as officers and/or representatives of Oxy-Health: Samir Patel (Oxy-Health CEO and President), Sandy Haines (Oxy-Health Director of Legal Affairs), and two Oxy-Health sales associates (Andrew Budiarto and Benjamin Galbraith).

The Plaintiffs compete directly with Oxy-Health for customers, although it appears that at one time they had a more cooperative relationship. Harris asserts that Oxy-Health had sold him numerous chambers in Michigan prior to 2007. According to an affidavit submitted by Thomas Panagos, Harris was once a distributor of Oxy-Health. However, that apparently cordial business relationship ended when Patel learned that Harris had sold other brands of hyperbaric equipment to non-Oxy-Health customers. Thereafter, Harris (via Panagos) was informed that he would no longer serve as a distributor for Oxy-Health products. Patel also caused a similar-type notice, which announced the termination of any distributor relationship between Harris and Oxy-Health, to be distributed to all Company personnel.

Panagos also opines that one of Oxy-Health's primary initiatives was to open up new

commercially-viable markets. As a result, Oxy-Health (1) opened a clinic in Madison, Wisconsin which targeted the midwestern region of the United States (including Michigan and Illinois), (2) made commercial appearances at trade shows in these states, and (3) exhibited its products at conferences and trade shows in Michigan.

In its complaint, the Plaintiffs allege that the Defendants have used a large number of aliases to post factually inaccurate and misleading information about its products on such internet websites as hyperbarics.info, YouTube, and Twitter. Pointing to these purported commercial intrusions, the Plaintiffs, through Hyperbaric Options and Hyperbaric Directory, claim to have seen a dramatic reduction in sales and revenue.

On May 11, 2012, the Defendants filed a motion to dismiss the complaint, contending that the Plaintiffs have failed to establish any basis for personal jurisdiction. In response, the Plaintiffs filed an amended complaint along with their response to the motion. On September 5, 2012, the Court issued an order which held that the pending motion to dismiss was mooted by the Defendants' amended complaint. Two weeks later, the Defendants submitted a second motion to dismiss for lack of personal jurisdiction. On April 4, 2013, the Plaintiffs proffered a request for leave to file a second amended complaint, contending that they had obtained additional information which had now become available to them.

II.

The Sixth Circuit has described an appropriate proper procedure for a district court to apply when faced with a motion to dismiss for lack of personal jurisdiction:

> Presented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual question.

*Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

Several years ago, the Sixth Circuit declared that "(t)he plaintiff bears the burden of making a prima facie showing of the court's personal jurisdiction over the defendant." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). The *Theunissen* court also declared that "(w)here the court relies solely on the parties' affidavits to reach its decision, the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Id.* at 1458. In a diversity case, a plaintiff can establish a prima facie case of jurisdiction by demonstrating that the exercise of this issue is authorized by (1) the law of the forum state, and (2) the Due Process Clause of the Fourteenth Amendment. *Neogen Corporation v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002). When considering a 12(b)(2) motion, the court must be afforded an opportunity to review pleadings and affidavits "in a light most favorable to the plaintiff." *Theunissen*, 935 F.2d at 1459. However, when faced with proof by the Defendants, "a plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* at 1458.

### III.

In their complaint, the Plaintiffs allege the following claims: (1) tortious interference with business expectancy; (2) defamation; and (3) a violation of the Michigan Antitrust Reform Act, Mich. Comp. Laws § 445.771 et seq. Both parties have submitted affidavits and briefs in support of their positions.[1] For purposes of this motion, the Defendants have not challenged the factual

---

[1] Although the complaint is stylized as a verified complaint, the verification is not made under penalty of perjury and therefore the allegations do not carry the same weight as an affidavit. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (citing 28 U.S.C. § 1746 (1994)*; Myers v. Transcor Am., LLC*, No. 3:08-295, 2010 WL 3824083 (M.D. Tenn. Sept. 30, 2010).

allegations that have been listed in the complaint. (Def. Reply 1).[2]  Rather, they argue that even if all of the allegations are true, personal jurisdiction is not appropriate.

      A.      General Jurisdiction

The Plaintiffs contend that this Court has general jurisdiction over the Defendants pursuant to Mich. Comp. Laws § 600.711(3). This provision permits a state to exercise general personal jurisdiction wherein a corporation engages in "[t]he carrying on of a continuous and systematic part of its general business with the state." Mich. Comp. Laws § 600.711(3). The Sixth Circuit has explained that "[g]eneral jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002) (quoting *Third Natl. Bank in Nashville v. WEDGE Group, Inc.,* 882 F.2d 1087, 1089 (6th Cir.1989)).

In this case, Oxy-Health is a California limited liability company with its principal place of business in Los Angeles.  For the purpose of this case, it is important to note that Oxy-Health (1)  is not incorporated in Michigan, (2) has no ownership of property in this state, (3) not pay taxes in Michigan, (4) is without any employees, officers or shareholders who are citizens of Michigan, and (5) does not maintain an office, a telephone number or a mailing address in the state.

Notwithstanding, the Plaintiffs steadfastly contend that the basic requirements of general jurisdiction are satisfied because Oxy-Health (1) maintains a website that is accessible to residents

---

[2] The Court notes, for example, that neither party has submitted affidavits or written evidence regarding the true identity of the alleged aliases that are the source of the relevant statements.

of Michigan; (2) offers a rental program on its website that is available to residents of this state; (3) has an authorized dealer in Ann Arbor that sells Oxy-Health products exclusively; (4) has sold products in Michigan in the past; and (5) has attended trade shows in Michigan. (Patel Aff.).

However, these identified efforts by the Plaintiffs - even if true - do not satisfy the sort of "continuous and systematic" contacts that will give rise to general jurisdiction. The maintenance of a website that permits customers to become acquainted with available Oxy-Health hyperbaric chambers is not a sufficient basis upon which to establish general jurisdiction, especially because the Plaintiffs have not claimed that their website indicates that any of the products (i.e., chambers) are located or sold in Michigan. *See Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002). The fact that Oxy-Health sold the chambers to Harris in 2007 is not evidence of continuous contacts in Michigan, because - according to the Plaintiffs' affidavits - Oxy-Health ceased selling to Harris in 2009. (Panagos Aff. ¶¶ 10-11). Sporadic sales are also insufficient to establish general jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2856 (2011). Furthermore, proffered evidence that Oxy-Health had an authorized dealer in Michigan who "probably made some sales does not establish the systematic and continuous business contacts necessary to justify general jurisdiction." *Killion v. Commonwealth Yachts*, 421 F. Supp. 2d 246, 257 (D. Mass. 2006). Here, no evidence has been submitted to the Court which ostensibly demonstrates the extent of sales or the type of relationship between a dealer and Oxy-Health, except for the fact that the website denotes an authorized dealer who received marketing materials with the Oxy-Health logo.

Finally, these contacts, when taken together as a whole, do not establish the type of contacts that were required in *Perkins v. Benguet Consolidated Mining Company,* 342 U.S. 437 (1952), which is considered to be the foundational case for establishing general jurisdiction. In *Perkins,* general jurisdiction was found wherein the corporation maintained an office in the forum state,

where it retained its company files and conducted meetings. The company also maintained bank accounts in the forum state and conducted correspondence related to its business. *Id.* at 415. In the instant case, the Plaintiffs have failed to demonstrate that Oxy-Health possesses the equivalent of this type of presence within Michigan. Therefore, there is an insufficient quality and quantity of proffered evidence to establish that Oxy-Health is subject to general jurisdiction.

      B.      Specific Jurisdiction

The Plaintiffs also claim to have established specific jurisdiction over all of the Defendants in this case. In a diversity case - such as here - a plaintiff can be successful on this issue by demonstrating that the exercise of jurisdiction is authorized by (1) the law of the forum state and (2) the Due Process Clause of the Fourteenth Amendment. *Neogen*, 282 F.3d at 888.

According to the law in Michigan, specific personal jurisdiction is permitted over individuals or corporations if it arises out of one of the following acts: "(1) The transaction of any business within the state, or (2) the doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort." Mich. Comp. Laws §§ 600.705, 600.715.

The Sixth Circuit has established a three-part test for determining whether the exercise of specific personal jurisdiction comports with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

Here, the parties have focused their arguments on the first *Mohasco* prong of "purposeful availment." This prong is satisfied "when the defendant's contacts with the forum state proximately

result from actions by the defendant . . . that create a substantial connection with the forum State, and when the defendant's conduct and connection with the forum are such that [it] should reasonably anticipate being haled into court there." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996). Due process does not require that a defendant be physically present in the forum state "'[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of [that] state.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

In cases of defamatory content published on an internet website, courts have used two different tests to determine whether the "purposeful availment" has been established: the first is based on "how interactive the website is with the people in the forum state" (i.e., *"Zippo"* test) and the second relates to "whether the court can assert personal jurisdiction over defamatory publications that reach into the forum state" (i.e., "*Calder* effects" test). *Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 678 (6th Cir. 2005) (unpublished).

      1.      *Zippo* interactivity sliding scale

The Court will first discuss the application of the interactivity test, as outlined in *Zippo Mfg. Co. v. Zippo DOT Com*, 952 F. Supp. 119 (W.D. Pa. 1997). The Defendants contend that according to the standards of *Zippo,* the Plaintiffs have been unable to establish the first *Mohasco* factor because the websites that were allegedly used to defame them are not sufficiently interactive to constitute a purposeful availment of the forum state.

Under *Zippo*, the operation of a website will constitute purposeful availment "if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen*, 282 F.3d at 890. On one end of the spectrum are situations where a defendant clearly does business over the internet (i.e., enters into contracts with residents of forum state that involve the knowing and repeated transmission of computer files over internet). *Zippo*, 952 F. Supp. at 1124.

Under these circumstances, jurisdiction is proper. *Id.* At the other end of the spectrum are those situations where the defendant simply posted information on a web site that is accessible to users in the forum state. *Id.* However, such passive web sites are not grounds for jurisdiction. *Id.* In the middle are those web sites that permit a user to exchange information with the host computer. *Id.* In these situations, a court must consider the level of interactivity and the commercial nature of the information exchange. *Id.*

      a.      Oxy-Health website

Although Oxy-Health maintains its own website, the Plaintiffs do not allege that any defamatory language was included on it. Hence, their claims cannot be said to "arise from" the maintenance of this website. *Mohasco Indus., Inc.*, 401 F.2d at 381. Therefore, the Court will consider only those websites and internet content which contain the allegedly defamatory language. *See Lifestyle Lift*, 768 F. Supp. 2d at 935.

      b.      hyperbarics.info

This site primarily provides information to those consumers who have purchased a hyperbaric chamber. The claimed purpose is to uncover purported scam artists who are selling faulty products or engaging in unethical marketing practices. Multiple portions of the web site refer specifically to Hyperbaric Options and Harris as unscrupulous and fraudulent sellers of poor quality merchandise. The home page contains a photograph of an address that is purportedly the office of Hyperbaric Options in Royal Oak, Michigan. The text at the top of the page alleges that Hyperbaric Options and the other listed companies are "simple home businesses" that are designed to disappear when necessary.

At least one part of the site is interactive. The operator encourages visitors to seek a full refund of any hyperbaric chamber that was purchased as a result of deceptive marketing. On a page

entitled "Contact Me," visitors are encouraged to submit information to the operator who promises to advocate on their behalf for the refund of the purchase price of any faulty hyperbaric chamber. In exchange, the operator requests a donation of $400 if a refund is obtained.

As users are able to submit information to the operator, this website falls in the middle of the *Zippo* spectrum. Notably, the operator offers to sell his services as an advocate to any interested visitors. However, there is no indication here that the operator of the website "specifically intended interaction with residents of [Michigan]." *Neogen*, 282 F.3d at 890. Harris and Hyperbaric Options were a part of a large list of individuals and businesses located across the country that are discussed by the website. Moreover, the web site specifically noted that Harris sold his chambers over the internet, including eBay, and thus the customers who were targeted with refund requests could, arguably, be located anywhere in the world. There is no evidence of any transactions or interactions with Michigan residents, or even that the operator hoped to interact with Michigan residents. *Compare Neogen*, 282 F.3d at 892 (defendant mailed test results to and accepted payment from Michigan customers); *Zippo*, 952 F. Supp. at 1126 (defendant contracted with 3,000 individuals and seven internet providers in forum). In sum, the Court cannot say that there is any credible evidence that the web site is "interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen*, 282 F.3d at 890.

      c.      YouTube and Twitter

These social media sites do not lend themselves to the *Zippo* interactivity test for several reasons. First, the Defendants neither own nor operate the web sites. In fact, they could be aptly described as merely visitors or account holders who posted information on the web sites. More importantly, these web sites - at least in this case - do not appear to have been primarily used to conduct business. Rather, it appears that they were used as a means of spreading information which

has been characterized by the Plaintiffs as disparaging. *Cf. Zippo*, 952 F. Supp. at 1124 (using interactivity as basis for personal jurisdiction in order to calculate "the nature and quality of commercial activity that an entity conducts over the internet"); *see also Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 679 (6th Cir. 2005) (using "effects test" to determine whether "publication or dissemination of information can give rise to specific jurisdiction). As a result, the content posted on these sites will be examined below using the "effects test."

      B.     *Calder* "effects test"

In order to establish personal jurisdiction under the "effects" test, a plaintiff must establish that (1) the defendant intentionally committed a tortious action which was expressly aimed for dissemination in the forum state, and (2) the brunt of the effects of the actions are felt within the forum state. *Lifestyle Lift*, 768 F. Supp. 2d at 937.

The parties do not dispute that the first prong is satisfied. However, as recognized by many courts, the second prong is more difficult to determine because the degree of focus on the forum state that is necessary to justify jurisdiction varies from court to court. *Id.*; *Ford Motor Co. v. Great Domains, Inc.*, 141 F. Supp. 2d 763, 774 (E.D. Mich. 2001). For example, in *Tamburo v. Dworkin*, the Seventh Circuit noted that "[s]ome circuits have read *Calder's* "express aiming" requirement fairly broadly, requiring only conduct that is targeted at a plaintiff whom the defendant knows to be a resident of the forum state." 601 F.3d 693, 704 (7th Cir. 2010) (internal quotation marks omitted). Other courts, however, "have read it more narrowly to require that the forum state be the focal point of the tort." *Id.* (internal quotation marks omitted).

The Sixth Circuit applies a narrowed application of *Calder*: "Without question, injury to a forum resident is not enough, and the *Calder* test has not been read to authorize personal jurisdiction in a plaintiff's home forum in the absence of 'something more' to demonstrate that the defendant

11

directed this activity toward the forum state." *Weather Underground, Inc. v. Navigation Catalyst Sys., Inc.*, 688 F. Supp. 2d 693, 700 (E.D. Mich. 2009) (internal citations omitted); *see also Air Products & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 552 (6th Cir. 2007) ("The Sixth Circuit . . . [has] narrowed the application of the *Calder* 'effects test,' such that the mere allegation of intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong.").

Here, the Defendants are alleged to have posted defamatory statements on YouTube, Twitter, and hyperbarics.info. Plaintiffs contend that jurisdiction is proper because "[the] Defendants knew that [Harris] was located in Michigan and all of the untrue and defamatory statements were directed at a Michigan company." (Pl. Resp. 15). On the basis of the Harris and Panagos affidavits, the Defendants were aware that the Plaintiffs are headquartered in Michigan. This fact is also supported by the photograph of the purported headquarters of Hyperbaric Options on the web site hyperbaric.info. However, this alone is insufficient to satisfy the "express aiming" requirement. Without more, a showing that the Plaintiffs are headquartered in Michigan is insufficient to establish that the Defendants expressly targeted the forum state in any of their online postings. *See, e.g.*, *Bailey v. Turbine Design, Inc.*, 86 F. Supp.2d 790, 796-97 (W.D. Tenn. 2000); *but see Park West Galleries, Inc. v. Phillips*, No. 08-12274, 2009 WL 728533 (E.D. Mich. 2009). For example, the Plaintiffs appear to have sought customers and business activities on a national level. Thus, it cannot be said that the Defendants, in their alleged attempts to defame and interfere with the Plaintiffs, specifically targeted Michigan customers with their messages. Nor is there evidence of any other connection between Michigan and the Defendants that would indicate express aiming.

The Plaintiffs cite *Park West* for the proposition that publishing defamatory material about a Michigan company is sufficient to justify jurisdiction. This case, however, is distinguishable.

Although the *Park West* court does not explicitly evoke the "effects" test, the evidence referred to by the court is sufficient to satisfy the requirement of "something more" than the plaintiff's residence in the forum state. *Weather Underground, Inc.*, 688 F. Supp. at 700. There, the defendant worked as the executive in charge of all publications for an organization that targeted art fraud. He published multiple articles on the organization's website alleging that the plaintiff - a Michigan corporation - engaged in unethical business practices. Significantly, the court noted that two percent of the organization's members were residents of Michigan. These memberships are analogous to the regular circulation of magazines in the forum state noted by the Supreme Court in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773-74 (1984) as sufficient to establish minimum contacts. No such connection between the Defendants and Michigan exists in this case. As the Plaintiffs have not established that the Defendants purposefully availed themselves of committing an act in Michigan, the Defendants motion to dismiss is granted.

The Plaintiffs have also requested leave to file a second amended complaint. Fed. R. Civ. P. 15(a) requires that leave to amend be freely granted. However, a request to amend a complaint may be denied as futile if the amended pleading would be unable to survive a motion to dismiss. *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005). Here, the proposed amendments to the complaint would not cure the jurisdictional issues addressed above. Therefore, the request to amend will be denied as futile.

### IV.

For the reasons that have been set forth above, the Court grants the Defendants' motion to dismiss (ECF No. 13) and denies the Plaintiffs' motion for leave to file a second amended complaint (ECF No. 18).

IT IS SO ORDERED.

Date: September 30, 2013                           s/Julian Abele Cook, Jr.
                                                   JULIAN ABELE COOK, JR.
                                                   U.S. District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 30, 2013.

                                                   s/ Kay Doaks
                                                   Case Manager